**Garland ROBERTS, Plaintiff,**

v.

**NORDEN DIVISION, UNITED AIRCRAFT CORPORATION, Defendant.**

**No. 75 C 1101.**

United States District Court, E. D. New York.

July 30, 1977.

Bernard M. Alter, Alter & Greene, Brooklyn, N.Y., for plaintiff.

Poletti, Freiden, Prashker, Feldman & Gartner, New York City, for defendant; Kathryn J. Rodgers, New York City, of Counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

BRAMWELL, District Judge.

Plaintiff, Garland Roberts, instituted an action in July, 1975, pursuant to the Civil Rights Act of 1866 and 42 U.S.C. § 1981, alleging he was subjected to discriminatory practices by defendant, Norden Division, United Aircraft Corporation (now United Technologies, Inc.).

This case was originally assigned to the late Judge Orrin Judd of this Court. After encountering many and protracted difficulties in obtaining discovery from the plaintiff, and after having previously sought relief from the Court without satisfactory resolution, on June 24, 1976, defendant moved before Judge Judd for an order dismissing the entire action. Ultimately, on July 2, 1976, Judge Judd issued a conditional order, dismissing the complaint unless

plaintiff met two specified conditions on or before July 13, 1976.[1]

The long and difficult history of the discovery practice preceding this order, as well as the events which transpired during July, 1976 will be described in greater detail later in this decision. As a result of these events, on December 12, 1976, defendant filed a motion again seeking an order of dismissal pursuant to Judge Judd's Order of July 2. Due to the untimely death of Judge Judd on July 7, 1976, this case was reassigned to this Court. An evidentiary hearing was held on February 24, and 25, 1977, to determine whether the plaintiff, Garland Roberts, had in fact complied with Judge Judd's July 2nd order [hereinafter the Order of July 2]. Throughout the course of this litigation, plaintiff had appeared *pro se*. He was, however, represented by counsel for the sole purpose of this motion.

Both parties were afforded an opportunity to review the record and submit proposed findings of fact and conclusions of law. The following shall constitute the findings of fact the Court considers determinative of defendant's motion as well as the Court's conclusions of law with respect to the aforesaid motion.

## FINDINGS OF FACT

1. In September, 1975, defendant served the plaintiff with a notice of deposition requesting the plaintiff to appear on October 29, 1975.[2] It was not until October 28, 1975, however, that plaintiff communicated with the defendant regarding the above and requested a month's postponement of the deposition. (Defendant's Exhibit F, Prashker Affidavit at Appendix B).

2. In early November, plaintiff again requested a postponement of this same matter to December 12, 1975. Plaintiff was hospitalized sometime in November. Defendant's attorneys requested that plaintiff telephone them after his release from the hospital so that a new date for the deposition could be arranged.[3] Plaintiff told the defendant's attorneys that he anticipated being hospitalized through Christmas. (*Id.* at 2)

3. On December 23, 1975, defendant's attorney telephoned King's County Hospital and learned that plaintiff had been released. Thereupon, attorneys for defendant sent plaintiff a letter (sent by certified mail and received on December 31, 1975) requesting him to contact their office to schedule a deposition date. (*Id.*)

4. Defendant's attorneys however, did not hear from the plaintiff and on January 13, 1976, served a second Notice of Deposition. (*Id.*)

5. On January 30, 1976, Mr. Roberts promised the attorneys for the defendant that he would call and schedule a deposition date for the week of February 9th. (*Id.*) Plaintiff did not call that week or anytime thereafter. After waiting for approximately three months, the defendant, on April 27, 1976, moved to dismiss the instant action pursuant to Federal Rules of Civil Procedure 37(d). That motion was returnable May 7, 1976.

1. Judge Judd's July 2nd Order provides as follows:

Plaintiff and counsel for defendant having appeared before me and argued defendant's motion to dismiss pursuant to F.R.C.P. 37(d) and court's order of May 21, 1976, defendant's motion is hereby granted unless the following conditions are met:

1. Plaintiff appears for the taking of his oral deposition by defendant at the offices of defendant's attorneys, Poletti Freidin Prashker Feldman & Gartner, 23rd Floor, 777 Third Avenue, New York, New York 10017, at 10:00 a.m., Tuesday, July 13, 1976, and at that time produces all documents and papers for inspection and copying requested in defendant's Request to Produce Documents dated January 12, 1976, and served upon defendant January 13, 1976; and which are in plaintiff's control and possession at the time of the deposition; and

2. Plaintiff tenders Two Hundred ($200.00) Dollars in cash as costs of this motion to defendant's attorneys prior to 10:00 a.m., July 13, 1976.

2. In this notice of deposition defendant also served plaintiff with a request to produce documents on or by October 28, 1975.

3. Plaintiff did not have a telephone, making it difficult for the defendant to contact the plaintiff. Consequently, the plaintiff was requested to contact the defendant.

6. On the return date of the motion, both parties appeared and plaintiff was directed by the Court to appear at the office of defendant's attorney at 10:00 A.M. on May 11, 1976, for the purpose of being deposed. Once again, plaintiff did not appear. Plaintiff's explanation for this non-appearance was that he "did not read the number of days right and tried to appear on May 17, 1976, but was told not to come." (Defendant Exhibit C, Robert's Affidavit at 1–2).

7. Upon plaintiff's May 11, 1976 default, defendant renewed its motion to dismiss. Upon the return of that motion on May 21, 1976, Judge Judd issued a conditional order providing that defendant's motion to dismiss would be granted unless the plaintiff paid $200.00 to the defendant as the cost of the motion and, in addition, appeared for discovery on June 22, 1976. (Hearing Minutes, 2/24/77 at 7 (Order of May 21st)). Judge Judd orally set the time for the deposition at 10:00 A.M. (Defendant Exhibit F, Prashker Affidavit at Appendix B).

8. Plaintiff did not appear at defense attorney's office at 10:00 A.M. on that date. The attorney and a stenographic reporter waited until 11:15 A.M. but Mr. Roberts neither appeared nor successfully contacted the office of defendant's attorneys to indicate that he would be delayed. He arrived at 1:20 P.M. Upon learning that the attorneys handling the case were out, plaintiff informed the secretary he would return on June 28th to be deposed. At that point, defense counsel was not consulted regarding the acceptability of the June 28th date. (Defendant Exhibit L, Prashker Affidavit).

9. After this third unsuccessful attempt to depose the plaintiff, defendant served and filed a Notice of Motion to Dismiss, alleging non-compliance with the May 21st Order. (Defendant Exhibit L).

10. Plaintiff telephoned Kathryn Rodgers, one of the defense attorneys, on June 28th for the purpose of confirming the deposition time he had unilaterally set on June 22nd. Ms. Rodgers advised Mr. Roberts that although he could come to the firm's office she was uncertain whether he would, in fact, be deposed since she was unfamiliar with the most recent developments in this case. (Hearing Minutes, 2/25/77 at 64, 66–67 (Rogers)).[4]

11. On July 2, 1976, when that motion was returnable, Judge Judd issued a conditional order providing that defendant's motion to dismiss would be granted unless the plaintiff appeared for a deposition on July 13, 1976 at 10:00 A.M. and tendered $200.00 in cash prior to or on that date, for costs. (Defendant Exhibit A, (Order of Judge Judd dated July 2, 1976)). Plaintiff participated in the drafting of that order to the extent of requesting certain changes in wording. (Defendant Exhibit N, Roberts Affidavit) Thus, he was fully aware of its contents.

12. On July 2, plaintiff, after receiving a copy of the Order of July 2, was prepared to tender the $200.00 in Judge Judd's Chambers. Mr. Roberts asked defendant's counsel, and the Judge's law clerk if he should pay the $200.00 at that time. (Hearing Minutes 2/24/77 at 100 (Roberts)). Kathryn Rodgers, one of the attorneys for the defendant, told plaintiff that it was his decision. The Judge's law clerk, Robert Schwartz, Esq., stated that immediate payment, while not required, would constitute compliance with one of the conditions of the Order of July 2. (*Id.*; Hearing Minutes, 2/25/77 at 69). Plaintiff decided not to pay the money at that time. Instead, he expressed his intention to spend it on a vacation in Nantucket.[5]

13. The record of the July 13, 1977 deposition reflects that plaintiff, due at 10:00 A.M., did not arrive until 10:50 A.M. Both the defense attorneys and the reporter had been kept waiting for nearly an hour. Roberts' only excuse for this lateness was his

4. Ms. Rodgers name is misspelled in the record as Rogers.

5. The money was not spent on a Nantucket weekend. However, the fact remains that the plaintiff chose to forego an opportunity to comply with one condition of the Order. (Hearing Minutes, 2/24/77 at 100 (Roberts)).

inability to locate a parking space. (Defendant Exhibit B at Exhibit A (Transcript of July 13th Deposition)). Plaintiff was asked whether he brought the $200.00 in *cash* as required by the Order of July 2. Notwithstanding his admitted participation in drafting that order, plaintiff responded that he was unaware that the order required cash. (*Id.*).

14. Plaintiff then attempted to offer what purported to be a check or checks of some kind. He subsequently offered as an explanation for his non-compliance with Judge Judd's Order of July 2 that he had "decided to turn it [the cash] into a negotible [sic] highly recognized bank tellers check, which the defendant refused to accept." (Defendant Exhibit C, Roberts Affidavit).

15. On July 15, 1976, defendant again moved for judgment dismissing the action, this time returnable on July 20, 1976. Annexed to plaintiff's responsive affidavit is a copy of a stub of teller's check No. 5310114 issued by The Dime Savings Bank of New York [hereinafter "The Dime"]. The plaintiff had handwritten the following information on the stub, "date 7/13/76; amount $200; to: Poletti, Freidin, Prashker, Feldman & Gartner [Defendant's law firm]; for: Court Order U. S. District Court." (*Id.* at Affidavit's Exhibit B).

16. This check, which the plaintiff originally purported to have purchased on July 13, 1976, was, in fact, not issued by The Dime until July 20, 1976. (Hearing Minutes, 2/24/77 at 39–40 (MacDougall)). Therefore, it is clear, that that instrument was not the one which was in plaintiff's possession on July 13, 1976.

17. At the evidentiary hearing held pursuant to the instant motion, plaintiff offered the Court a different explanation of the events transpiring at the July 13 aborted deposition. There he stated that he was, at that time, prepared to tender one Dime check in the amount of $150, purchased on July 13, 1976, which listed his name on the

front. (Hearing Minutes, 2/24/77 at 114 (Roberts)). In addition, he stated that he was prepared to turn over a $50 personal check given to him by one George Webley.[6] (*Id.* at 87). The Court finds that plaintiff did not tender a Dime check or money order on July 13 based upon the fact that no Dime instrument was issued to Roberts on that date. (Hearing Minutes, 2/24/77 at 41–44 (MacDougall)). Further, Webley's $50 personal check did not name Poletti, Freidin, Prashker, Feldman & Gartner (Defendant's attorneys) as payee. (Hearing Minutes, 2/24/77 at 73 (Webley)).

18. The only instrument purchased by plaintiff from The Dime, during the period in question, was a $200 teller's check purchased on July 20, 1976, seven days *after* the July 13 deadline imposed by Judge Judd's Order of July 2. (Hearing Minutes 2/24/77 at 42–43 (MacDougall)).

19. At no time between July 2, 1976 and July 13, 1976 did plaintiff in any way tender the $200 as required by the Order of July 2.

## CONCLUSIONS OF LAW

In that the Court's findings of fact clearly demonstrate the plaintiff's noncompliance with Judge Judd's Order of July 2, this case falls within Rule 37 of the Federal Rules of Civil Procedure. Rule 37 provides in part:

### FAILURE TO COMPLY WITH DISCOVERY: SANCTIONS

.   .   .   .   .

(b) Failure to Comply with Order.

(1) *Sanctions by Court in District Where Deposition is Taken.* If a deponent fails to be sworn or to answer a question after being directed to do so by the court in the district in which the deposition is being taken, the failure may be considered a contempt of that court.

---

**6.** This final version, offered by plaintiff at the evidentiary hearing, is only one the Court considered in making its findings of fact.

(2) *Sanctions by Court in Which Action is Pending.* If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

. . .

(d) *Failure of Party to Attend at Own Deposition or Serve Answers to Interrogatories or Respond to Request for Inspection.* If a party . . . fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Since plaintiff failed to comply with discovery requirements, he has violated Rule 37 of the Federal Rules of Civil Procedure.

A trial court, in exercising its discretion in the imposition of sanctions for such violation, must do so in light of the particular facts of the case before it. In order to determine the proper sanction, the Court must now look to the party's reasons for such failure to comply. Central to the determination of the appropriate sanction is the willfulness or good faith manifested by the party's conduct. *Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).[7] Willful failure has been defined as any intentional or conscious failure as distinguished from involuntary non-compliance. *United States v. 3963 Bottles, More or Less*, 265 F.2d 332, (7th Cir.), *cert. denied*, 360 U.S. 931, 79 S.Ct. 1448, 3 L.Ed.2d 1544 (1959). This requirement of willfulness is particularly essential when the Court is faced with the possibility of imposing the harsh sanction of dismissing an entire action. *Flaks v. Koegel*, 504 F.2d 702 (2d Cir. 1974). *See e. g., Moore v. Island Creek Coal Co.*, 375 F.2d 732 (4th Cir. 1967) (District Court's dismissal warranted where plaintiff failed to appear at time and place designated for taking of deposition and plaintiff failed to appear at hearing on defendant's motion to dismiss); *Bourgeois v. El Paso Natural Gas Co.*, 20 F.R.D. 358 (S.D.N.Y. 1957), *aff'd*, 257 F.2d 807 (2d Cir. 1958) (Complaint dismissed where plaintiff ignored a court order directing plaintiff to appear at a specified time and place since he deemed the deposition to have been sought solely for harassment. The court noted the appropriate measure to be a request for a protective order); *Delphy v. Bernuth, Lembcke Co.*, 217 F.2d 301 (2d Cir. 1954) (Complaint dismissed where plaintiff failed to appear after receiving notice of examination. Fact that action had been pending for only 29 days was insufficient to vitiate the effect of this conduct, absent a showing of adequate excuse.).

Conversely, a complaint should not be dismissed if the noncompliance is due to inability rather than willfulness or bad

---

**7.** *Societe* involved imposition of sanctions under Rule 37(b) of the Federal Rules of Civil Procedure. However, its principles extend to the entire Rule. *Flaks v. Koegel, infra.*

faith. *Von Der Meydt v. Kennedy,* 112 U.S.App.D.C. 78, 299 F.2d 459 (*per curiam*), *cert. denied,* 370 U.S. 916, 82 S.Ct. 1554, 8 L.Ed.2d 498 (1962), cited in *Flaks v. Koegel, supra. See generally,* Annot. 2 A.L.R. Fed. 811 (1969).

■■■ The law is clear that a party who fails to give a deposition as required by order of the court risks imposition of sanctions. *Bourgeois v. El Paso Natural Gas Co., supra.* While a *pro se* plaintiff such as Mr. Roberts, must be accorded special consideration, due to the unique problems faced by one lacking expertise in the law, the situation before the Court is one involving conduct rather than one requiring knowledge of the law. Further, plaintiff personally, fully participated in the preparation and drafting of Judge Judd's Order of July 2 and was fully aware of its contents and the potential consequences of non-compliance.

■■■ Indeed, the record reflects that Mr. Roberts' critical comments during the drafting conference resulted in significant modifications of that Order prior to its issuance. This Court is bound by Judge Judd's Order, which provides for dismissal of this complaint in the event that the conditions of the Order are not met. Although lesser sanctions are available under Rule 37, they are not appropriate given the plaintiff's blasé attitude and gross indifference with respect to making himself available for the taking of a deposition at designated times.

In a recent case, the Supreme Court, in considering dismissal for failure to answer interrogatories, has stated:

> here [under Rule 37] as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Nat'l Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976) (*per curiam*). Crucial to the Court's reasoning was the vital concept that while the particular parties seeking reversal of a dismissal for failure to comply with discovery might be expected to comply with future discovery orders, *other* parties to other actions, would *not* be sufficiently deterred from flouting discovery orders.

Here, the well recognized standards for excusable noncompliance with discovery under Rule 37 of the Federal Rules of Civil Procedure have clearly not been met. This is not a case of either plaintiff's inability to comply or his involuntary noncompliance. Rather, the record reveals a pattern of deviation after deviation from mutually agreed upon times designated for the taking of plaintiff's deposition. Plaintiff *twice* failed to meet the specified conditions required by two separate court orders to avoid dismissal of his complaint. There is no indication that this entire course of conduct was anything but voluntary, hence willful. Plaintiff's cavalier attitude manifesting indifference as to whether scheduled depositions would be taken, has resulted in much unnecessary delay.

The history of plaintiff's conduct with respect to making himself available for his deposition, to wit, repeated failure to promptly appear at pre-arranged times and his unsatisfactory excuses for such failure, reveals a flagrant disregard for his obligations under the discovery rules of the Federal Rules of Civil Procedure.

Moreover, plaintiff in failing to tender $200 to defendant's counsel on July 13, 1976 willfully violated Judge Judd's July 2nd Order. The availability of $200 on July 20, 1976 (seven days *after* the deadline imposed by the July 2nd Order) when viewed in light of the entire history of this case, cannot mitigate the effect of plaintiff's past conduct. The record abundantly indicates plaintiff's manifest disregard of his responsibility as a *pro se* litigant.

The Court has, of course, taken into consideration plaintiff's *pro se* status, prior to

the hearing. However, in spite of this, the Court finds insufficient mitigating circumstances to justify plaintiff's failure to comply with the Order of July 2. Plaintiff's *pro se* status cannot be deemed a sufficient excuse for failure to comply with that Order, where plaintiff was fully aware of its contents and capable of understanding its significance.

In light of Mr. Roberts' inexcusable noncompliance with Judge Judd's Order of July 2, this Court holds that the attorneys for the defendant should not be required to indulge the plaintiff any longer.

Defendant, a large corporate enterprise with substantial resources, also seeks, in addition to dismissal of this action with prejudice, an award to the defendant of costs in the amount of $600.[8] This Court, after careful consideration of the equities, finds that an award of expenses in this case would be unjust. Plaintiff, an unemployed electrical engineer is now significantly underemployed. Rather than using his professional education in a personally meaningful and economically rewarding manner, plaintiff now drives a "gypsy cab" in the streets of New York. (Hearing Minutes, 2/24/77 at 103 (Roberts)). The record reveals that the plaintiff's personal resources were substantially inadequate to meet his obligation to pay the $200 imposed as costs by Judge Judd. Indeed, Mr. Roberts on various occasions was compelled to borrow money and to pawn personal effects in his efforts to raise the $200 Court costs. (Hearing Minutes, 2/24/77 at 80 (Matthews); *Id.* at 97, (Roberts); Defendant's

Exhibit N (Pawn Receipt); Hearing Minutes, 2/25/77 at 42 (Roberts)).

This Court firmly believes that substantial deterrence to others has been affected by the dismissal of this action with prejudice. Moreover, the Court believes that Mr. Roberts himself has been sufficiently punished by the loss of his action which precludes any opportunity for a determination on its merits.

If this application for costs were to be granted, the benefit to be derived by the Corporate defendant would be minimal, whereas the detriment to be suffered by the *pro se* plaintiff would be substantial.

Therefore, the Court finds that an award of costs would be unjust, *see* Rule 37 Federal Rules of Civil Procedure, and that the interests of justice demand that the application for costs be denied in all respects.

Accordingly, for all of the aforesaid reasons, the defendant's motion to dismiss this action with prejudice is granted, and the defendant's application for costs is denied.[9]

It is so ORDERED.

---

**8.** Defendant's papers reflect a discrepancy with respect to the amount sought as costs. Defendant's motion papers filed on December 12, 1976, seek $600 in costs, whereas defendant's Proposed Findings of Fact and Conclusions of Law filed on May 9, 1977 indicate an application for $500. The Court believes the latter figure to be merely a clerical error. Inasmuch as the Court, in the interests of justice, will make no award of costs, this discrepancy is immaterial.

**9.** Defendant's motion papers filed on December 12, 1976, also sought an adjudication of plain-

tiff in criminal contempt for his alleged fabrication of evidence and submission of said evidence to this Court to prevent implementation of the Order of July 2, thereby allegedly impeding the administration of justice. Since this specific issue was not addressed during the course of the evidentiary hearing, the Court has determined to reserve consideration and decision on the second aspect of defendant's motion which clearly requires substantial and different procedures for adjudication so that the plaintiff can be afforded a full and fair opportunity to be heard on the merits of that motion.